FILED
2010 Sep-24 PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CHRISTINE HARTSELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:09-CV-706-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Christine Hartsell ("Ms. Hartsell") commenced this action on April 13, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and supplemental security income benefits. The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Social Security Act.[1]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Hartsell alleged that her disability period began on November 18, 2003.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

(Tr. 52). She was 33 years of age on that date. (Tr. 64). She alleged an inability to work due to pain in her hip, right shoulder, and elbow, cubital tunnel syndrome, heart problems, depression, short term memory problems, degenerative disc disease in her neck, and fibromyalgia. (Tr. 68). Ms. Hartsell's past gainful work experiences include jobs as a medical transcriptionist and a security guard. (Tr. 57, 250-252).

Ms. Hartsell filed an application for benefits on November 23, 2005. (Tr. 52-55). Her claims were denied initially on September 26, 2006. (Tr. 40-44). On October 3, 2006, she filed a request for a hearing before an ALJ. (Tr. 51).

A hearing before the ALJ was held on January 10, 2008. (Tr. 240-267). The ALJ concluded Ms. Hartsell was not disabled as defined by the Social Security Act and denied her application for benefits on July 25, 2008. (Tr. 8-20). Ms. Hartsell subsequently obtained new counsel and filed a timely request for review with the Appeals Council. (Tr. 221-222). On November 3, 2008, counsel for Ms. Hartsell submitted a letter brief (Tr. 226-237) and a report from Dr. David Wilson of Gadsden Psychological Services dated September 5, 2008 (Tr. 271-276). On February 18, 2009, the Appeals Council denied review, which resulted in the ALJ's decision being the final decision of the Commissioner. (Tr. 4-7).

On April 13, 2009, Ms. Hartsell filed her complaint with this court asking for review of the ALJ's decision. (Doc. 1). This court has carefully considered the

record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as the

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 9, 2010.

"inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Also, the Commissioner has a "duty to develop a full and fair record." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996).

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether the claimant has a severe impairment;

(3)  whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4)  whether the claimant can perform her past work; and

(5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

### **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Hartsell had not engaged in substantial gainful activity since November 23, 2005, the date of her application. (Tr. 13). The ALJ also determined that Ms. Hartsell had the severe impairments of "fibromyalgia; history of motor vehicle accident with resulting cubital tunnel syndrome, rotator cuff strain, contusion to the superficial branch of the peroneal nerve of the left ankle, and post traumatic syndrome; asthma; and depression/anxiety." (Tr. 13). The ALJ further determined that Ms. Hartsell did not have a mental impairment or a group of

impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ evaluated Ms. Hartsell's residual functional capacity [3] ("RFC") and found that she had the ability "to perform work which allows for lifting up to 15 pounds; sitting four of eight hours; standing and walking four of eight hours; a sit/stand option; no repetitive overhead reaching or lifting; no operation of foot or leg controls; no work around unprotected heights; and non-complex job tasks." (Tr. 16). During the hearing, the ALJ asked the VE the following question:

> If I should find the claimant capable of lifting objects weighing up to 15 pounds, I find that she can sit for four out of eight hours per day and stand and walk for four out of eight hours per day with normal breaks, but I find she is precluded from repetitive overhead reaching and lifting as well as operation of foot or leg controls and cannot work around unprotected heights. And I further find that she would be limited to noncomplex job task. Would there be jobs she could perform, and if so, would you identify representative examples?

(Tr. 264). The VE responded as follows:

> Well, under that condition, she would be able to do unskilled and entry-level work of a sedentary classification. For example, in that classification, you would have cashiers on a sedentary classification. In this region on north central Alabama at a sedentary classification, you're actually showing about 1,240 such jobs. Gate tender such as plants, institutions, checking people in, checking people out, approximately 470 in this particular region. Individuals working as security monitors. In

---

[3] "Residual functional capacity is the most [one] can still do despite [one's] limitations." 20 C.F.R. § 404.1545(a)(1).

>  that classification approximately 310. Over all of those type jobs, unskilled and entry-level within the hypothetical that His Honor provided, you're going to be looking at approximately 34, 3,500 in the region.

(Tr. 264-265).

Based upon the testimony of the VE, the ALJ determined that Ms. Hartsell is "limited to unskilled work" (Tr. 16), and that she is unable to perform her past relevant work . (Tr. 18). The ALJ considered Ms. Hartsell's "age, education, work experience, and residual functional capacity," and determined that "jobs [] exist in significant numbers in the national economy that the claimant can perform." (Tr. 19). Based on the foregoing analysis, the ALJ concluded that Ms. Hartsell had not been under a disability since November 23, 2005, and that she was not disabled under § 1614(a)(3)(A) of the Social Security Act.

## **ANALYSIS**

Ms. Hartsell asserts several issues in support of her appeal. First, Ms. Hartsell contends that the Appeals Council did not adequately consider the additional evidence submitted on November 3, 2008. Second, she contends that the decision of the ALJ was not based on substantial evidence. The court will address these arguments in turn.

## I. ADDITIONAL EVIDENCE SUBMITTED TO THE APPEALS COUNCIL DOES NOT WARRANT REMAND FOR FURTHER ADMINISTRATIVE CONSIDERATION.

Ms. Hartsell contends that the Appeals Council erred in failing to remand her claim. She claims that the Appeals Council did not adequately consider the report of Dr. David Wilson that was submitted to the Appeals Council on November 3, 2008. According to Ms. Hartsell, Dr. Wilson's report "provides a much more in depth report on Claimant's depression," (Pl.'s Reply Br., p. 5).

As noted above, the ALJ denied Ms. Hartsell's claim on July 25, 2008. On November 3, 2008, counsel for Ms. Hartsell submitted Dr. Wilson's report to the Appeals Council. The Appeals Council considered Dr. Wilson's report but denied Ms. Hartsell's request for review on February 18, 2009, finding that she had not provided "a basis for changing the Administrative Law Judge's decision." Notice of Appeals Council Action, p. 2, dated Feb. 18, 2009 (Tr. 5).

"With few exceptions, the claimant is allowed to present new evidence at each stage of th[e] administrative process." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007), *citing* 20 C.F.R. § 404.900(b). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at

1261, *citing* 20 C.F.R. § 404.970(b). "The claimant may seek review in a federal court of 'any final decision of the Commissioner of Social Security,' [] only after exhausting these administrative remedies." *Ingram*, at 1261 (internal citation omitted), *citing Sims v. Apfel*, 530 U.S. 103, 107, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000).

"When reviewing the [Appeals Council]'s denial of review, [the court] must 'look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in making its decision whether to review an ALJ's decision." *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008), *quoting Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998). The Appeals Council is required to consider new and material evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470. "'New' evidence is evidence that is non-cumulative, and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010).

In this case, the Appeals Council considered the additional evidence submitted by Ms. Hartsell, but found "no reason under our rules to review the [ALJ]'s decision." (Tr. 4). The Appeals Council specifically stated that "we considered the reasons you

9

disagree with the decision *and the additional evidence* listed on the enclosed Order of Appeals Council." (Tr. 4). The Appeals Council "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 4). Thus, the Appeals Council considered the new evidence yet determined that, even considering the new evidence, the ALJ's decision should not be remanded.

In reviewing the Appeals Council's decision, this court, like the Appeals Council, is required to look at the additional evidence to determine if it is new, material, and related to the period on or before the decision of the ALJ. 20 C.F.R. § 416.1470(b). The additional evidence submitted by Ms. Hartsell did not meet the standard for consideration required by 20 C.F.R. § 416.1470(b) because it did not relate to the period on or before the date of the ALJ's decision. *Barclay*, 274 F. App'x 738, 743-44 (11th Cir. 2008). Although Dr. Wilson observed in his September 5, 2008, report that Ms. Hartsell "indicated that she has had serious problems since her serious motor vehicle accident in 2003," (Tr. 276), Dr. Wilson stated "*[a]t this time*, her depression and anxiety do appear so severe that it is unlikely that she will be able to maintain a job in a competitive work environment." (Tr. 276) (emphasis added). Dr. Wilson clearly did not relate Ms. Hartsell's depression and anxiety to a period on or before the ALJ's decision. Because the evidence did not relate to the relevant time period, the evidence was not required to be considered. *Barclay*, 274

F. App'x at 744, *citing Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266-67 (11th Cir. 2007). Therefore, the Appeals Council did not err in failing to remand the claim for further administrative consideration.

Assuming, however, that the evidence meets the standard for consideration under 20 C.F.R. § 416.1470(b), the Appeals Council properly denied review of the ALJ's decision. "[A] medical opinion of a treating source is entitled to controlling weight if" properly supported in the record. *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010), *citing* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "A . . . psychologist is not a treating source if the relationship 'is not based on [the claimant's] need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [the claim] for disability.'" *Robinson*, 365 F. App'x at 996, *citing* 20 C.F.R. § 416.902. "The opinions of nonexamining, reviewing physicians, . . . when contrary to those of examining physicians[,] are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988), *quoting Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.1987).

In this case, the ALJ noted that Ms. Hartsell was treated by Dr. Holder who "reported that [Ms. Hartsell] did not have disabling anxiety or depression." (Tr. 17). The ALJ also noted that Ms. Hartsell was examined by Dr. Arnold in February 2006.

11

Dr. Arnold "diagnosed adjustment disorder with depressed mood and indicated that the claimant's global assessment of functioning [GAF] was 55,[4] but she did not report that the claimant had more than mild to moderate mental limitations." (Tr. 17). The ALJ also noted that the nurse practitioner at Marshall Family Clinic "who has treated the claimant [since late 2006] has not reported that the claimant has . . . limitations related to her . . . mental impairments." (Tr. 18). Moreover, the ALJ noted that "[n]o treating or examining physician has reported that the claimant was unable to work for any period of 12 continuous months due to her . . . mental impairments." (Tr. 18).

Dr. Wilson, however, determined on September 5, 2008, that Ms. Hartsell's "depression and anxiety do appear so severe that it is unlikely that she will be able to maintain a job in a competitive work environment." (Tr. 276). He further stated that "[t]here is no indication that her condition will improve in the next 12 months." (Tr. 276). He assigned a GAF of 50.[5] Dr. Wilson's report is contrary to the records of Dr. Holder, Dr. Arnold, and the Marshall Family Clinic, and is therefore entitled to little weight. The opinions and records of Dr. Holder, Dr. Arnold, and the Marshall Family Clinic are consistent with one another and are therefore entitled to controlling weight.

---

[4]A GAF of 51 to 60 indicates moderate symptoms, while a GAF of 41-50 indicates serious symptoms. *See* Global Assessment of Functioning (GAF) Scale, from the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV, 1994). (Tr. 268).

[5]As noted above, a GAF of 50 indicates serious symptoms.

Considering all of Ms. Hartsell's medical records, the ALJ's decision is supported by substantial evidence. Therefore, the Appeals Council did not err in refusing to remand the claim for further administrative consideration.

**II.   THE DECISION OF THE ALJ WAS BASED ON SUBSTANTIAL EVIDENCE.**

Ms. Hartsell contends that the decision of the ALJ was not based on substantial evidence for several reasons. First, she contends that the report of Dr. Wilson, along with her medical records on file, support an award of benefits or a remand of her claim. Second, she contends that the hypothetical question posed to the VE failed to adequately state her impairments. Third, she contends that the ALJ's credibility determination is not supported by substantial evidence. Lastly, she contends that the ALJ's decision that she does not meet the criteria of Listing 12.04 is not supported by substantial evidence.

**A.  Even considering the report of Dr. Wilson, the decision of the ALJ was based upon substantial evidence.**

According to Ms. Hartsell, the court must consider the additional evidence submitted to the Appeals Council in determining whether the decision of the ALJ was based upon substantial evidence. As the court determined above, even considering the additional evidence submitted to the Appeals Council, the ALJ's decision is supported by substantial evidence.

**B. The hypothetical question posed to the vocational expert accurately stated claimant's impairments.**

Ms. Hartsell also complains that the hypothetical question posed to the vocational expert ("VE") was improper because it "did not accurately state claimant's pain level, depression or her shoulder problems." Pl.'s Mem. in Supp. of Disability, p. 14, doc. 9, filed Nov. 30, 2009. "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

In his decision, the ALJ outlined all of the treatment received by Ms. Hartsell for her shoulder pain and depression. He noted that Ms. Hartsell was treated for right shoulder pain, among other symptoms, on November 18, 2003, following the motor vehicle accident in which she was injured. Dr. Elmendorf treated Ms. Hartsell through March 2005, but also referred her to a number of specialists. In March 2004, Dr. Lindaman, an orthopedic surgeon, examined Ms. Hartsell for a number of symptoms, including "right shoulder pain with crepitus with overhead elevation and rotation." (Tr. 14). "Dr. Lindaman's impression was . . . contusion with persistent right shoulder pain. . ." (Tr. 14). He prescribed medication and physical therapy. Ms. Hartsell attended physical therapy from April to August 2004. (Tr. 14).

Dr. Staub treated Ms. Hartsell for right shoulder and forearm pain in March and May 2004. Dr. Staub, who had diagnosed Ms. Hartsell's fibromyalgia in 2000, noted that her fibromyalgia "had been symptomatically worsened by her motor vehicle accident." (Tr. 14). He prescribed additional medication, and suggested a regular exercise program. Ms. Hartsell continued to complain of right shoulder pain in May 2004, and Dr. Staub injected her right shoulder.

Ms. Hartsell was examined by Dr. Rasmus, a neurologist, in October 2004 for multiple symptoms. In March 2005, Ms. Hartsell told Dr. Rasmus that "she only had to infrequently take Vicodin for right shoulder pain." (Tr. 14).

Dr. Holder examined Ms. Hartsell in February 2006 for numerous complaints, including fibromyalgia, chronic right shoulder pain and depression. (Tr. 15). Dr. Holder noted that Ms. Hartsell's fibromyalgia "could well be superimposed on her chronic pain syndrome." (Tr. 15). He recommended "an alternate medication regimen." (Tr. 15). Dr. Holder noted that Ms. Hartsell complained that her depression was exacerbated with increased pain, but he did not "believe that her depression . . . w[as] severe enough to inhibit her socially or from an employment standpoint." (Tr. 15).

In February 2006, Ms. Hartsell was also evaluated by Mary Arnold, Psy.D. Dr. Arnold indicated that Ms. Hartsell may suffer from adjustment disorder with

depressed mood. As noted above, Dr. Arnold assigned a global assessment of functioning at 55, but indicated that Ms. Hartsell does not have more than mild to moderate symptoms. (Tr. 17).

The ALJ also noted that Ms. Hartsell has been treated at the Marshall Family Health Clinic since late 2006, "but the nurse practitioner who has treated the claimant has not reported that the claimant has disabling pain or limitations related to her physical or mental impairments." (Tr. 18). In addition, the ALJ noted that "[n]o treating or examining physician has reported that the claimant was unable to work for any period of 12 continuous months due to her physical or mental impairments." (Tr. 18). The ALJ accordingly determined that "[i]n activities of daily living, [Ms Hartsell] has no more than mild restriction due to her mental impairments." (Tr. 16). Likewise, the ALJ found that Ms. Hartsell "has no more than mild difficulties due to her mental impairments" in social functioning. (Tr. 16). He further found that Ms. Hartsell's "allegations of restriction in activities of daily living and difficulties in social functioning are related primarily to her physical impairments." (Tr. 16). In addition, the ALJ found that Ms. Hartsell had "no more than moderate difficulties" with regard to concentration, persistence or pace, and that she had not experienced any episodes of decompensation. (Tr. 16).

The ALJ ultimately determined that Ms. Hartsell's level of pain should be no more than mild to moderate within the residual functional capacity. He noted that any testimony or allegations otherwise are not credible.[6] He did take into account her shoulder pain because he found that she should not perform work that involves repetitive overhead reaching or lifting. The ALJ did not include any reference to Ms. Hartsell's depression because he concluded that Ms. Hartsell's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 or 12.06." (Tr. 15). For these reasons, the question posed by the ALJ to the VE did take into account all of her impairments, and is supported by substantial evidence. Moreover, even considering Dr. Wilson's report, the question posed by the ALJ to the VE is supported by substantial evidence.

### C. The ALJ evaluated the credibility of Ms. Hartsell's testimony regarding her level of pain under the appropriate legal standard, and the decision is supported by substantial evidence.[7]

To establish the credibility of her subjective complaints of pain and other symptoms, Ms. Hartsell must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising

---

[6]The court will discuss this issue separately, below.

[7]The court notes that the following overall framework and analysis was used in *Leiter v. Astrue*, No. 2:08-CV-1453-VEH, (Doc. # 16) (N.D. Ala. Aug. 24, 2009), and in *Vinson v. Astrue,* No. 4:08-CV-0532-VEH, (Doc. #11) (N.D. Ala. Apr. 7, 2009). *Leiter* and *Vinson* similarly resulted in orders affirming the ALJ's decision. (Doc. #17 and Doc. #12, respectively).

17

from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). In *Wilson v. Barnhart*, the Eleventh Circuit reversed the district court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (Tr. 17). The ALJ reasoned as follows:

> . . . The claimant testified that her main activity was lying in bed. It is clear that Dr. Staub did not believe that she needed to be so restricted in her activities, and that he did not believe the claimant to be disabled. No physician has reported that the claimant should be so restricted in her activities as the claimant has described. Dr. Lindaman released the claimant for regular activities in August 2004. He did not believe her to be disabled. He did not believe that the claimant even needed more than over the counter pain

> medication. Dr. Rasmus reported in March 2005 that the claimant was improving on her treatment program, and he expected additional gradual improvement. Dr. Rasmus did not report that the claimant was disabled. The records of Dr. Elmendorf, the claimant's primary care physician through March 2005, also do not indicate disability.
>
> Although Dr. Holder believed that the claimant needed reevaluation. . ., he did not report that the claimant had disabling pain or limitations. He also reported that the claimant did not have disabling anxiety or depression. Dr. Arnold did not report that the claimant had disabling mental limitations. . . .

(Tr. 17). Based upon the foregoing analysis by the ALJ, the ALJ's credibility finding is supported by substantial evidence.

### C.  The decision of the ALJ in finding that Ms. Hartsell does not meet the criteria of Listing 12.04 is supported by substantial evidence.

Ms. Hartsell contends her mental condition met Listing 12.04. (Doc. 9 at 25). She supports her contention with the report of Dr. Wilson. As the court determined above, even assuming that Dr. Wilson's report meets the standard for consideration, considering the entire record, the ALJ's decision is supported by substantial evidence.

## CONCLUSION

Upon review of this matter and for all the reasons explained above, there is substantial evidence in favor of the ALJ's decision. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this 24th day of September, 2010.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge